KARL, Justice.
During its regular session in 1972, the Legislature, by Senate Joint Resolution Number 1305, apportioned the state into forty consecutively numbered Senate districts and one-hundred twenty consecutively numbered House districts. In some eases, in both the Senate and House plans, two or more districts were assigned identical territory.[1]
Following its adoption, Senate Joint Resolution 1305 was presented to this Court by th£ Attorney General,[2] and the Court, in In *22 re Apportionment Law Appearing as Senate Joint Resolution Number 1305, 1972 Regular Session, 263 So.2d 797 (Fla.1972), approved the plan of apportionment, including the multi-member districts.
In an order clarifying the original opinion and denying rehearing, this Court set out the procedures for any future proceedings relating to the validity of the plan. Jurisdiction was retained in the Court over the subject matter because the real-life impact of the plan on individual voting power could not be demonstrated until after an election or series of elections.
In original proceedings, Alberto R. Cardenas and Frank Colunga have petitioned for supplementary relief, declaratory relief and for the appointment of a commissioner to take testimony and report to the Court the findings thereof. They allege, inter alia, that the territory included in Miami’s House Districts 109 through 114 is identical and that the inclusion of the predominantly Hispanic precincts into this multi-member district invidiously discriminates against the petitioners.
The allegations of the petition include population statistics, voter registration information, a current breakdown of Hispanic and non-Hispanic residents and voters, and projections of future population patterns. Voting activities and election results from 1976 are presented in support of the discrimination charge, and included is a general allegation that the voting strength of voters of Hispanic origin has been negated and that the result is legislative indifference to the interests of the Hispanic minority-
We note that petitioners do not contend that multi-member House District 109-114, from its inception, discriminated against petitioners by operating to minimize or cancel out their voting strength. As conceded at the bar of the Court, the alleged discrimination has occurred through change in the community by the influx of large numbers of persons of Hispanic origin. Furthermore, there is no allegation made by petitioners that the Senate Joint Resolution encompassed a deliberate attempt to discriminate racially against those of Hispanic origin in Miami’s House District 109-114.
In In re Apportionment Law, supra, we held that multi-member districts are not, per se, invalid but, rather, are permissible and may co-exist with single-member districts under the same plan.
We therein concluded:
“It might well be that, designedly or otherwise, a multi-member constituency scheme, under the circumstances of a particular case, would operate to minimize or cancel out the voting strength of racial or political elements of the voting population. When this is demonstrated, we will consider whether the apportionment plan still passes constitutional muster.
“In other words, the apportionment plan as framed may be constitutional on its face, but upon its application in a particular case the joint resolution may violate organic law. This is in accord with our holdings that a statute may be valid as applied to one state of facts, though invalid as applied to another state of facts. See 4 F.L.P., Constitutional Law, § 10, p. 253, and authorities cited.”
We did not intend to retain jurisdiction of Senate Joint Resolution 1305 so that this Court could continuously monitor changing ethnic, racial or population patterns and require adjustments to reflect those changes. Such a day-to-day examination would allow us, on one occasion, to find that a particular multi-member district passed constitutional muster and, at some later date, to strike it down because of an influx of a particular racial group into the area. This would be an impossible task and was not our expressed intention.
The purpose for retention of jurisdiction was to determine the validity of a multi-member district at its inception after its *23 real-life impact had been tested in at least one election.
The constitutional provision authorizing declaratory judgment review of the legislative apportionment plan was designed to test the sufficiency of what the Legislature had done and was not designed to provide a method for continuous updating of the apportionment plan adopted by the Legislature by Senate Joint Resolution 1305, based on changing circumstances as opposed to consideration of challenges to the original plan.[3]
The petition before us prays for relief because of events that have transpired since 1972. It does not state grounds for invalidating the apportionment decision of the Legislature as of its effective date. It does not, therefore, state a cause for relief under our described retained jurisdiction, and the petition cannot be considered here in the first instance. The relief desired by petitioners must be sought through separate proceedings, to wit, a declaratory judgment action before the Circuit Court.
Accordingly, for the foregoing reasons, this cause is transferred to the Circuit Court, in and for Leon County,[4] for consideration of the matter as an original proceeding for declaratory judgment before that court.
It is so ordered.
OVERTON, C. J., and BOYD, ENGLAND and SUNDBERG, JJ., concur.
HATCHETT, J., dissents with an opinion.
ADKINS, J., dissents and concurs with HATCHETT, J.

. Multiple districts with identical territory are authorized by Article III, Section 16(a), Florida Constitution, and are referred to as multi-member districts.

. Judicial review is required by Article III, Section 16(c), Florida Constitution:
“JUDICIAL REVIEW OF APPORTIONMENT. Within fifteen days after the passage of the joint resolution of apportionment, the *22 attorney general shall petition the supreme court of the state for a declaratory judgment determining the validity of the apportionment. The supreme court, in accordance with its rules, shall permit adversary interests to present their views and, within thirty days from the filing of the petition, shall enter its judgment.”

. With emphasis, we note that Article III, Section 16(a), mandates the Legislature to reapportion in the second year following each decennial census.

. Petitioner having joined the Secretary of State as a party to this action, venue properly lies in Leon County. This does not mean to say that the Secretary of State is a proper party or that there is a cause of action stated in this complaint. These are matters which must be determined by the Circuit Court.